Gardiner, J.
 

 delivered the opinion of the court.
 

 Whatever opinions may have formerly obtained, it now seems to be established, that whenever it is apparent- from the writing
 
 *123
 
 or deed itself that no danger to the title or interest of the complainant is to be apprehended, a court of equity will not entertain a bill for the cancellation or delivery of the instrument. (5
 
 Ves.
 
 293;
 
 Story’s-Eq.
 
 §700,
 
 a.)
 
 Nor is there any reason why a party should be allowed to resort to the expensive remedy of a suit in chancery, to procure the. relinquishment of a right which it is' obvious the defendant never possessed, and against which, if asserted, the complainant had a perfect legal defence written down in the title deeds of his adversary.
 

 On the 14th of December, 1836, the attorney general published the following notice' of sale : “ Lot 150, in the Onondaga Reservation, containing 250 acres, mortgaged to the state by David Lyman, and mortgage registered in the clerk’s office of Cayuga county, December 23, 1796. The part of said lot to be sold, is the part called and known by name of
 
 remainder of the part
 
 for which a new account was opened in the comptroller’s books in the name of Bildad Barber.”
 

 In prescribing the requisites of a notice of sale in the foreclosure of mortgages to the state, the statute declares that if a new account has been opened upon the books of the comptroller, for any part of the land mortgaged, the notice shall state whose new account, or whether what is called a residue or remainder on said books is intended to be sold. (2
 
 R. S.
 
 214, § 20,
 
 sub.
 
 4.) The advertisement distinctly informed the purchaser, that the sale would be the
 
 remainder
 
 (so called and known) of the
 
 part
 
 for which a new account was opened on the comptroller’s books in the name of Bildad Barber. To locate the parcel sold, it would be necessary to ascertain the part for which the new account was opened with Barber. * "
 

 The complainant alleges in his bill that on the 17th of November, 1813, a new account was opened with Barber according to the statute, of a parcel of said lot 150, about 49J rods wide, extending across the easterly end of said lot, and containing sixty-two and one half acres. All of which appears by the books of the comptroller. This, then, is the parcel set off to Barber. The sale, however, was to be only of the
 
 remainder
 
 (so known and called) of this parcel. The term implies that a part of the tract assigned to Barber had been previously sold.
 
 *124
 
 And the complainant accordingly informs us that on the first day of May, 1821, Barber conveyed to the two Bacons twenty-six acres by metes and bounds, part of the above parcel; that the deed was duly acknowledged and recorded; that a new account was opened upon the comptroller’s books with the Bacons, to whose rights and interest the complainant had succeeded; and that from the 19th of January, 1822, when the account with the Bacons was opened, that part of the sixty-two and one half acres which was not conveyed to the Bacons, and which was not embraced in the-new account opened with them, was
 
 distinguished, called and known, by the name of the remainder
 
 of the part for which a new account was opened with Bildad Barber on- the books of the comptroller. So far there would seem to be no difficulty. The advertisement, in connection with the comptroller’s books, which are expressly referred to, identify the parcel to be sold, and demonstrate that it was not, and could not have been, the land of the complainant. Whatever, therefore, might have been the form of the deed from the attorney general, it will be seen by reference to the 1st and 20th sections of the act “ of mortgages to the state,” that the purchaser must make title through the advertisement and the sale in virtue of it; and that the affidavits of publication, and the proceedings upon the sale must be recorded in the office of the secretary of state. (1
 
 R. S.
 
 212, 214.) The interest of the complainant could not therefore have been really in jeopardy, even had the -deed contained an erroneous description.
 

 But it does not. The complainant alleges that the premises advertised were,
 
 in pursuance thereof,
 
 sold to the defendant, and that on the 10th of January, 1838, the attorney general executed his deed of conveyance, according to the statute, to the former.
 

 The deed which is made an exhibit, recites the mortgage of Lyman to the state, describes the entire lot No. 150 by metes and bounds, recites the advertisement, and sale in pursuance thereof, and then proceeds as follows: “And whereas, at the time and place last aforesaid, all that piece or parcel of land lying and being in the said county of Onondaga, and known and distinguished as the “remainder” of that part of said lot 150,
 
 *125
 
 Onondaga Reservation, for which a new account was opened in the comptroller’s books in the name of Bildad'Barber, being about forty-nine and a half rods wide, and extending across the iasterly end of said lot one hundred and fifty, and supposed to contain sixty-two and one half acres, was, in pursuance of the said notice, offered for sale, and struck off to Hiram Clift, &c. According to the obvious reading of the deed, the remainder-only was sold and struck off to the defendant. The only difference between the conveyance and the advertisement is, that the former describes more particularly the parcel set off to Barber, of which the premises sold were the remainder. The complainant, however, construes the deed in the same manner ¿as if all the description after the word “ remainder ” to and including the word “Barbe:,1’ were included in a parenthesis—thus connecting the term “ being,” and all subsequent thereto, with, and making
 
 it
 
 a part of, the description of the “ remainder ” conveyed - If, however, we take the language as written, or if all after the word remainder to and including “acres” is read in parenthesis, the result would be the same. In either case, a grammatical or legal construction of the language would apply the description to the parcel for which a new account was opened upon the books of the comptroller, and not to the remainder of that parcel.
 

 The allegation in the bill, therefore, that said deed purports to convey the whole sixty-two and a half acres to the defendant, is unfounded in fact. Upon the whole, we think there is no foundation for this proceeding. If the defendant had, as it is claimed, unjustly asserted a title to the land of the complainant, the statute to compel the determination of claims to real estate, (2
 
 R.
 
 S. 313,) afforded a cheap, expeditious, and appropriate remedy.
 

 The decree of the supreme court must be affirmed.
 

 Decree affirmed.1